UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

John Stahl,

    Plaintiff,                                  Case No. 09-14266

v.                                                Hon.  Sean F. Cox

Phil Czernik, and
Catherine O'Meara,

    Defendants.
_____/

## OPINION & ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff John Stahl ("Plaintiff") was arrested in Las Vegas, Nevada for larcenies that occurred in Romulus, Michigan.  Plaintiff filed this § 1983 action against Defendant Lt. Phillip Czernik ("Czernik") of the Romulus Police Department, alleging violations of his Fourth, Fifth, and Fourteenth Amendment rights.  Plaintiff brought an additional claim for malpractice against his former attorney, Defendant Catherine O'Meara.  This Court held a hearing on April 7, 2011, which was adjourned and concluded on July 5, 2011.  On May 18, 2011, the Court dismissed without prejudice any claims against Ms. O'Meara upon stipulation of the parties.  (Doc. No. 43).  The matter is currently before the Court on Defendant Czernik's Motion for Summary Judgment.  For the reasons set forth below, the Court shall deny Defendant Czernik's Motion for Summary Judgment.

### BACKGROUND

Plaintiff resided on Essex Street, in Romulus, Michigan until August 6, 2008.  (Def. Czernik's Stmt. of Facts at 1, Doc. No. 33).  From December, 2007 to August, 2008, Plaintiff

1

worked odd jobs after he was laid off by his employer. *Id*. at 1-2. Plaintiff often went door-to-door in his neighborhood soliciting work and, on one occasion, mowed the lawn of Carol Daly, who lived one block south of Plaintiff's home. *Id*. at 2.

On July 29, 2008, Ernest Brown, one of Ms. Daly's neighbors, observed a man going from house-to-house, ringing doorbells, and looking through windows. *Id*. at 2. Mr. Brown observed the man open Ms. Daly's gate and walk into her backyard. *Id*. Mr. Brown went to the home of Diane Swantek, who resided next door to Mr. Brown, and asked her if she recognized the man looking into the windows. *Id*. Mr. Brown and Ms. Swantek witnessed the man leave Ms. Daly's home with a jar of money and they subsequently called the police. *Id*. at 2-3.

Mr. Brown described the man to Romulus police officers as a white male with medium-short hair, approximately 6 feet tall, not stocky, dressed in shorts and a top, and with a large tattoo of a dragon on one of his legs. *Id*. at 3. Ms. Swantek described the man to police officers as between 5'8" and 5'10", with a muscular-slim build, "cropped", medium-to-dark brown hair, dressed in camouflage shorts and a white t-shirt, with a large tattoo on his left calf. *Id*. at 3. These descriptions were noted in a narrative report created by responding Officer Kuczera. *Id*.

When Officer Kuczera spoke to Ms. Daly, she stated that a man named John Stahl, whose description was similar to that described by Mr. Brown and Ms. Swantek, had been going door-to-door soliciting landscaping work and had once cut her grass. *Id*. at 4.

On August 6, 2008, Jacqueline Culiver reported that a tall, white male with blond hair, dressed in a t-shirt, knocked on her door on Lynn Street, one block southwest from Plaintiff's home on Essex Street. *Id*. Ms. Culiver also stated to officers that the man had tattoos on his arms. *Id*. at 5. When Ms. Culiver answered the door, the man said that he had the wrong house,

2

and she observed him run from her home and turn south on Essex Street. *Id.*

Ms. Culiver described her encounter to Officer Sadler, who included the information in a police narrative. *Id.* Ms. Culiver testified in her deposition that at some point during her interaction with Officer Sadler, Ms. Culiver saw a photo of Plaintiff on a computer screen in the officers' vehicle. (Plf's Resp., Ex. K at 19). Ms. Culiver identified the person in the picture as the man she witnessed at her door. (Def. Czernik's Stmt. of Facts at 5). At that time, the officer sitting in the vehicle stated that the man in the picture had broken into someone's house earlier and that other witnesses identified Plaintiff as the perpetrator. (Plf's Resp., Ex. K at 19). This identification of the Plaintiff by Ms. Culiver was not included in the police narrative.

Lt. Phillip Czernik, the detective assigned to the case, received the file regarding the encounters and learned from officers that Plaintiff was a suspect. *Id.* at 6. Lt. Czernik showed Mr. Brown, Ms. Swantek, and Ms. Culiver a photo line-up on the same day. *Id.* Mr. Brown and Ms. Culiver, who had previously seen the photo of the Plaintiff the day before and was told that person was breaking into homes, identified Plaintiff in the photo line-up. *Id.* Ms. Swantek, however, did not identify Plaintiff in the photo line-up . *Id.* Mr. Brown testified in his deposition that at the time of the photo line-up, he would be sure of the suspect's identity if he knew the suspect had a tattoo on his leg. *Id.* at 7.

Czernik did not include in his investigative reports the suspect's large, leg tattoo or Mr. Brown's statement to Czernik during the photo line-up regarding the suspect's leg tattoo. *Id.* Plaintiff does not have any tattoos on his legs. *Id.* Czernik also did not include in his investigative reports the fact that Ms. Swantek did not identify Plaintiff in a photo line-up, or that Ms. Culiver was told by officers, after viewing a picture of Plaintiff in the police car, that

Plaintiff was a suspect in a previous break-in. Prior to the photo line-ups, Czernik's only basis for believing that Plaintiff was a suspect was Ms. Daly's statement to Officer Kuczera that Plaintiff matched the description and had been going door-to-door soliciting landscaping work. *Id*.

A warrant for Plaintiff's arrest was issued by Barbara Smith, the Deputy Chief of the Warrant and Screening Division at the Wayne County Prosecutor's Office, on August 11, 2008, based upon Czernik's investigation reports, police reports, and photo line-ups of the Daly and Culiver incidents. *Id*. at 9.

Plaintiff was arrested in Las Vegas on August 31, 2008, for an unrelated incident and, after 29 days in Clark County Jail, Plaintiff was transferred to Michigan. *Id*. at 9-10. On the advice of counsel, Plaintiff waived his preliminary examination on October 29, 2008, and therefore waived his right to contest probable cause. (Def. O'Meara Mtn., Doc. No. 27, Ex. 1). Plaintiff was released from Wayne County Jail on February 9, 2009 – more than six months after his initial arrest – after another individual confessed to the crimes to which Plaintiff was a suspect.

## STANDARD OF REVIEW

Defendant Czernik brings his Motion for Summary Judgment pursuant to FED. R. CIV. P. 56. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the

4

pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)). In deciding a motion for summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

ANALYSIS

To state a claim under § 1983, a plaintiff must set forth facts that, when construed favorably, establish: 1) the deprivation of a right secured by the Constitution or laws of the United States; and 2) that the deprivation of that right was caused by a person acting under the color of state law. *Dominguez v. Correctional Medical Services,* 555 F.3d 543, 549 (6th Cir. 2009).

With regard to the first prong of this test, Plaintiff's first count alleges false arrest and false imprisonment.[1] Within this count, Plaintiff alleges Fourth, Fifth, and Fourteenth Amendment violations.[2] (Complaint at 6, Doc. No. 1). Specifically, Plaintiff asserts that Czernik lacked probable cause to arrest him. *Id*. Plaintiff also asserts that even if probable cause existed at the time of Plaintiff's arrest, the probable cause "evaporated" because of verifiable

---

[1] At the April 7, 2011 hearing, Plaintiff's counsel notified the Court that Plaintiff was not alleging state-law tort claims of false arrest and false imprisonment.

[2] At the April 7, 2011 hearing, Plaintiff's counsel withdrew his Fifth Amendment claim.

5

information readily available to Czernik. *Id*. With regard to the second part of this test, there is no dispute that Czernik was acting under the color of state law.

In his motion, Czernik first contends that he is entitled to qualified immunity. Second, Czernik insists that, even if he is not entitled to qualified immunity, Plaintiff's claim fails because there was probable cause to issue a warrant for Plaintiff's arrest.

I.  Is Officer Czernik Entitled To Qualified Immunity?

First, the Court will address Czernik's claim that he is entitled to qualified immunity. Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008). Determining whether government officials are entitled to qualified immunity generally requires two inquiries: 1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and 2) whether the right was clearly established at the time of the violation. *Dominguez*, 555 F.3d at 549. "[A] qualified immunity defense can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Duke*, 23 F.3d 1086, 1089 (6th Cir. 1994).

"Generally, summary judgment based on qualified immunity is proper if the officer was not on notice that his conduct was clearly unlawful." *Bletz v. Gribble*, 641 F.3d 743, 749 (6th Cir. 2011). "However, if genuine issues of material fact exist as to whether the officer committed acts that would violate a clearly established right, then summary judgment is

improper." *Id*.

Here, the Court finds that a genuine issue of material fact exists as to whether Czernik omitted material facts with reckless disregard to the truth when applying for an arrest warrant regarding the Plaintiff. Thus, Czernik is not entitled to qualified immunity.

   A.   <u>A Constitutional Violation Occurred When Czernik Omitted Facts To The Deputy Chief of the Warrant and Screening Division.</u>

As stated above, Plaintiff alleges Fourth and Fourteenth Amendment violations. Specifically, Plaintiff asserts that Czernik and Smith lacked probable cause to issue a warrant for his arrest for the following reasons:

- Czernik omitted from the warrant request that Ms. Swantek did not identify Plaintiff in the photo line-up as the perpetrator.

- Czernik omitted from the warrant request that Mr. Brown's identification of Plaintiff was qualified on whether the suspect had a tattoo on his leg.

- On the day of the second incident, Ms. Culiver had seen a photo of Plaintiff on a computer screen in a police vehicle. Ms. Culiver identified the person in the picture as the man she witnessed at her door. At that time, officers stated that the man in the picture had broken into someone's house earlier and that other witnesses identified Plaintiff. Plaintiff believes that this prior identification tainted Ms. Culiver's identification of Plaintiff in the photo line-up administered by Czernik the next day.

- Czernik failed to compare witness descriptions of Plaintiff with Romulus Police records. Romulus Police records indicate that Plaintiff is listed at 5'5" (although Plaintiff is really 5'8") and Reporting Officer Narrative #1 indicates that witnesses described the suspect as 6'0". (Narrative #1, Doc. No. 31, Ex. J). Additionally, witnesses described the suspect as having tattoos on his leg and his arms. Romulus Police records do not indicate Plaintiff has any tattoos on his legs or arms.

In response to Czernik's motion, Plaintiff has failed to provide any evidence that Czernik's omissions of fact in his warrant application were knowing or deliberate. Czernik, however, does not dispute that these facts were omitted from the materials presented to Ms.

7

Smith. The issue then is whether Czernik's omissions were made with a reckless disregard for the truth, and whether these omissions were material to a finding of probable cause.

Czernik contends in his Motion for Summary Judgment that, despite the omissions, there was probable cause to issue a warrant for Plaintiff's request. (Czernik Mtn. at 7). Whether Smith would have recommended a warrant for the arrest of Plaintiff if she had knowledge of these additional circumstances is a question of fact for the jury. *See Hill v. McInyre*, 884 F.2d 271, 276-77 (6th Cir. 1989) (stating that "the question whether the judicial officer issuing the warrant would have done so even without the knowingly or recklessly false statement is one for the jury. . .").

In the context of a § 1983 false-arrest claim, a Plaintiff is "required to prove by a preponderance of the evidence that in order to procure the warrant, [the officer] knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood and such statements or omissions [we]re material, or necessary, to the finding of probable cause." *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) (internal quotations omitted). "To show this violation, the conduct of the public officials must rise beyond the level of mere negligence." *Yancey v. Carroll County, Ky.*, 876 F.2d 1238, 1242 (6th Cir. 1989).

"[P]robable cause to arrest and prosecute is based on the facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person ... in believing ... that the suspect has committed, is committing, or is about to commit an offense." *Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002) (internal quotations omitted). "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 344 (1986)

(internal citations omitted). An officer "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id*. at 341.

Furthermore, the Sixth Circuit has held "that officers, in the process of determining whether probable cause exists, cannot simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone." *Ahlers v. Schebil*, 188 F.3d 365, 371-72 (6th Cir. 1999); *see also Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630 (6th Cir. 2004). The Sixth Circuit has also held that "an officer [or investigator] cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989); *see also Kuehl v. Burtis*, 173 F.3d 646, 651 (8th Cir. 1999).

In this case, Barbara Smith, the Deputy Chief of the Warrant and Screening Division at the Wayne County Prosecutor's Office, made her warrant recommendation based upon documents provided by Czernik. (Smith Dep. at 13, Doc. 35, Ex. A). Czernik provided Smith with the officer narratives for both incidents, both investigator reports, and the photo line-up sheets. *Id*. The evidence before Smith showed that Ms. Daly stated that a man named John Stahl matched the description by the witnesses and had been previously going door-to-door in the neighborhood soliciting landscaping work. It was also known that Stahl lived in the same neighborhood as where the incidents occurred. Additionally, Czernik provided evidence that two witnesses identified Plaintiff in a photo line-up as the man involved in both incidents.

In viewing the evidence in a light most favorable to Plaintiffs, Czernik ignored two eye-witness statements that described the suspect as having a large, dragon tattoo on his calf, failed to review Romulus police records for Plaintiff's description, and omitted these facts in his warrant application. (Czernik Dep. at 55-57). A simple police record search of Plaintiff would have revealed that Plaintiff was 4 or 5 inches shorter (according to Romulus police records) than the shortest witness-description of the perpetrator. Additionally, as stated above, Romulus police records do not indicate any tattoos on Plaintiff's legs or arms. Knowing that the perpetrator had a large, dragon tattoo on one of his legs, Czernik made no effort to investigate whether Plaintiff had a similar tattoo on his leg (and, in fact, never bothered check for a tattoo after Plaintiff's arrest).

The Court finds that a reasonably prudent officer would have corroborated the witnesses' descriptions of the perpetrator with the description of Plaintiff included in the police department's own criminal records, and presented these discrepancies to the individual issuing the warrant.

Plaintiff has also provided evidence that Czernik omitted a number of other material facts from the warrant application that Smith admitted would have been relevant information when determining whether probable cause existed. At her deposition, Ms. Smith stated that some of the reasons for denying a request for a warrant would be *"[i]f someone is not sure of an identification"* or "there are inconsistent stories that are being given." (Smith Dep. at 8) (emphasis added). Later, regarding the positive, but qualified identification of Mr. Brown, Smith testified:

> Q: From reading that report, does that – would that have convinced you that Ernest Brown had positively ID'd John

        Stahl as the perpetrator of the crime?

A:     I wouldn't have charged if I didn't think that.

Q:     Okay. At anywhere in that incident report, are you aware if Detective Czernik disclosed the comment by Ernest Brown, stating that John Stahl may be the guy but he would have to look at his legs to see the tattoos to see if it was the guy. Was there any disclosure of that fact?

\* \* \*

Q:     Again, does that document [referring to Czernik's report to Smith] indicate that Mr. Brown limited his identification to saying, "It may be him but I would need to see his – the tattoos on his legs."

A:     No, I didn't see that in there.

\* \* \*

Q:     All right. Did Detective Czernik ever inform your office that they do not have any records with John Stahl having tattoos on his legs?

A:     Our office. Do you mean me personally?

Q:     You personally, yes.

A:     I don't have any recollection of that.

Q:     Okay. Would that be something that would be important; to figure out if this is the right individual?. . . If, in making your determination of for probable cause, would you want to know whether the person matches the identification or the description?

A:     Well, yes.

Q:     Okay. As far as you're aware, did Detective Sergeant Czernik ever disclose that, as far as he's aware, that Mr. Stahl does not have tattoos on his legs?

\* \* \*

A:     I don't have any memory of that.

\* \* \*

Q:     If an officer wrote down that a person positively identified someone without also disclosing a "maybe" or a qualifier that, "I need to see additional information to make a

11

> decision," is that something you would expect to be in the police report?
>
> A: Yes, I would hope it would be.
>
> Q: Is that also something that could affect your decision as to whether to recommend a warrant?
>
> * * *
>
> A: Yes.

(Smith Dep. at 20-21, 24, 29). Similarly, with regard to the positive, but allegedly tainted identification by Ms. Culiver, Smith testified:

> Q: Okay. With respect to Jacqueline Culver – Culiver, do any of these documents [referring to those presented to Smith by Czernik] indicate that. . . Jacqueline Culiver was shown a picture of John Stahl prior to the photographic line-up?
>
> A: No.
>
> Q: Are you aware that that occurred – or at least that's what she testified occurred?
>
> * * *
>
> A: No, other than you telling me that - -
>
> * * *
>
> Q: I want you to assume for the purposes of the question that Jacqueline Culiver saw a picture of John Stahl on a computer screen inside a police car. Okay? And then the next day, Detective Czernik came out and did a photographic line-up with her where she positively ID'd John Stahl as the perpetrator of the crime.
>
> Would have that affected the legitimacy of the photographic line-up, in your opinion?
>
> * * *
>
> Of her identification in the line-up?
>
> * * *
>
> A: It would be a factor that you would want to know in considering that a line-up was held subsequently; that's one of the factors you consider.
>
> Q: Were you ever informed that – of that event, of her seeing a photo – photo of John Stahl?

12

> A: No.
>
> * * *
>
> Q: What about where [a witness is] shown a photograph of the person or they see a photograph of the person; would that be something that should be in an incident report?
>
> * * *
>
> A: In an ideal world, yes, I would think it should have be in there.
>
> Q: Well, how about just in the world we have; is that something you would expect to be in there?
>
> A: Yes.

*Id.* at 25, 26-27, 30. Finally, with regard to Ms. Swantek's inability to identify Plaintiff in a photo line-up, Smith testified:

> Q: [A]fter reading [the incident report from Detective Czernik], were you ever under the impression that a photographic line-up was done with Diane Swantek?
>
> * * *
>
> A: But I didn't see anything saying she saw a line-up, didn't pick someone, miss-ID'd.
>
> * * *
>
> Q: Okay. And, in your experience, would you expect to see something like that, if a witness did not identify him?
>
> * * *
>
> A: One of – well, sometimes the police don't give us line-ups where people have not identified the suspect or have picked someone else out. We have to explain that that is relevant and we want that at the warrant stage.

*Id.* at 90-91.

In viewing this evidence in the light most favorable to the Plaintiff, a reasonable jury could find that Smith would not have issued an arrest warrant if this information had not been omitted by Czernik. In the best case scenario for the Plaintiff, Smith would not have considered the qualified identification by Mr. Brown, the allegedly tainted identification by Ms. Culiver, and would have known that a third witness, Ms. Swantek, did not identify Plaintiff in a photo

13

line-up. Smith would have also reviewed potentially exculpatory evidence that Plaintiff's description in the Romulus police records did not match the witnesses' descriptions of the perpetrator because of perpetrator's height and the tattoo located on his leg. Thus, the only evidence Smith could have considered is Ms. Daly's statement that Plaintiff had been going door-to-door soliciting work in the neighborhood and the Sixth Circuit has always held that "a suspect's mere presence. . . is too insignificant a connection. . . to establish that relationship necessary to a finding of probable cause." *United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006).

At the hearing on this matter, Plaintiff's counsel insisted that Czernik's omissions were made with reckless disregard for the truth. The Court agrees. Based upon Czernik's disregard of the witnesses' descriptions of the perpetrator's height and tattoo markings, the sheer number of significant omissions, and the testimony of Smith, Plaintiff has shown that a reasonable juror could find that Czernik's omissions were made with reckless disregard for the truth and rise to a level beyond negligence. Similarly, Plaintiff has also shown that there is a genuine issue of material fact as to whether Czernik's reckless omissions were material to the determination of probable cause.

Because Plaintiff has provided evidence that Cazernik recklessly omitted material facts in his arrest warrant application, it follows that, viewing the facts in the light most favorable to Plaintiff, Plaintiff has shown that a constitutional violation occurred.

  B. <u>Plaintiff's Right To Be Free From Unlawful Seizures Was Clearly Established At The Time Of The Violation.</u>

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [he] is doing violates that right.'"

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir.1992)).

Czernik does not contest that Plaintiff had the right to be free from unreasonable seizures at the time of his arrest. Accordingly, the Court concludes that Plaintiff has satisfied both requirements for overcoming Czernik's qualified immunity defense.

II.     When Construed Favorably, Plaintiff Has Established A §1983 Claim.

As stated in Part I(A), in viewing the evidence in light most favorable to the Plaintiff, Plaintiff has established that there is a genuine issue of material fact that Czernik violated Plaintiff's Fourth and Fourteenth Amendment Rights. Additionally, there is no dispute that the Constitutional violations were caused by Czernik while he was acting under the color of state law. Accordingly, Plaintiff has established a prima facie case for a §1983 claim.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

                                   S/Sean F. Cox                                   
                                   Sean F. Cox
                                   United States District Judge

Dated: September 28, 2011

I hereby certify that a copy of the foregoing document was served upon counsel and/or the parties of record on September 28, 2011, by electronic and/or ordinary mail.

                                   S/Jennifer Hernandez                                   
                                   Case Manager